■ In the Matter of FENTON THOMPSON, Appellant, v LISA THOMPSON, Respondent. [699 NYS2d 181] —Spain, J. Appeal from an order of the Family Court of Clinton County (Ryan, J.), entered May 20, 1998, which, *inter alia*, dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' children.

Petitioner and respondent were married in 1987 and are the parents of two children, born in 1989 and 1992. The parties separated in April 1996, executing a separation agreement in May 1996 providing that respondent would have physical custody of the children and petitioner would have reasonable visitation rights. As of the filing of this appeal, the parties remained legally separated but no divorce proceedings had been initiated.

In June 1997, petitioner filed a modification application seeking sole custody of the children, alleging a change in circumstances based upon his concerns about, *inter alia*, respondent's lifestyle, her paramour and her failure to take adequate care of the children. At trial, petitioner presented evidence demonstrating that, after the parties separated, significant changes had occurred in respondent's living arrangements. Two months after the execution of the separation agreement, respondent moved with the children and her paramour into a rundown house trailer, located in a trailer park that was threatened with closure because of health and safety violations.

In addition, petitioner submitted evidence that the paramour was a poor influence on the children, given the paramour's long history of alcohol abuse and his criminal record which included convictions for driving while intoxicated, aggravated unlicenced operation of a motor vehicle in the third degree, assault on a police officer, uttering forged checks and petit larceny. Moreover, the paramour had recently violated the terms of his probation—by consuming alcoholic beverages and driving while intoxicated—which resulted in a sentence of four months of weekends in jail and five years' probation. Also, it was alleged that, in the presence of the children, one of whom suffers from asthma, the paramour smoked marihuana as well

as tobacco. Importantly, there was testimony that respondent had left the children alone with the paramour and his brother, even though the latter had been arrested for endangering the welfare of a child based upon his sexual relationship with a 14-year-old girl. Prior to trial petitioner obtained an order of protection to keep the brother away from the children.

Respondent presented countervailing evidence, establishing that her living arrangements and the paramour's behavior had greatly improved. The paramour testified that he is now employed full time as a warehouse worker and that he and respondent, who is also employed, had moved with the children in May 1997 into an apartment in Plattsburgh which his probation officer testified was "very neat [and] clean". The paramour also testified that he has a close relationship with the children and spends his leisure time recreating with them. The probation officer further testified that the paramour had completed an alcohol rehabilitation program and, based on the probation officer's observations and random drug testing, the paramour had abstained from alcohol and controlled substance use since. He also noted, based upon periodic visits to their apartment, that the children appeared to be happy in their living arrangement and seemed to have a good relationship with the paramour. At the close of proof the children's Law Guardian strongly advocated that a joint custody arrangement would be in the children's best interests.

Immediately following the close of trial, Family Court rejected the joint custody options and rendered an oral decision finding that both parties were fit parents, each capable of having sole custody of the children, and directed that respondent retain sole custody of the children while petitioner was granted a continuation of his liberal visitation privileges. Petitioner appeals.

When adjudicating custody and visitation rights, the determinative factor is, of course, the best interests of the children (*see, Friederwitzer v Friederwitzer*, 55 NY2d 89, 93-95; *Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903). Any modification of a preexisting custody arrangement will be made only upon a showing of a change in circumstances which reflects a definite need for modification to ensure the best interests of the children (*see, Matter of Karpensky v Karpensky*, 235 AD2d 594, 595; *see also, Matter of Crawson v Crawson*, 263 AD2d 656; *Matter of Daniels v Guntert*, 256 AD2d 940, 941; *Matter of Lizzio v Jackson*, 226 AD2d 760; *see also*, Family Ct Act § 652 [a]). A number of factors must be reviewed when considering whether the requisite change in circum-

stances exists, including "the quality and stability of the respective home environments and each parent's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (*Matter of Perry v Perry*, 194 AD2d 837; *see, Matter of Cepeda v Murray*, 228 AD2d 749, 752; *Matter of Belden v Keyser*, 206 AD2d 610, 611). Family Court's findings in this regard are generally accorded great deference due to its opportunity and ability to assess the credibility of witnesses, and will not be set aside unless they lack a sound and substantial basis in the record (*see, Matter of Morgan v Becker*, 245 AD2d 889, 890; *Matter of Williams v Williams*, 188 AD2d 906, 907).

During the six days of trial before Family Court, most of the testimony elicited was from the parties and their family members, with the witnesses for each side extolling the parenting abilities of the party who had called him or her to testify. The only witness who could be described as disinterested was the paramour's probation officer who testified that since the paramour's conviction for violating the terms of his probation in March 1997, he appeared to have reformed, i.e., he had stopped drinking and had become a law-abiding citizen and, he opined, a positive influence in the children's lives. Family Court set forth on the record the factual basis for its decision giving an explanation of the factors which led to the conclusion that sole custody should remain with respondent, placing special emphasis on the probation officer's testimony opining that the paramour has evolved into a positive influence in respondent's household where the children appeared to be thriving.

Although we agree with Family Court's decision to maintain the existing physical custody arrangement, we nonetheless conclude, based upon our review of the record, that petitioner established that some modification of the existing custody arrangement was warranted and that the court should have awarded joint custody in this case (*see, Matter of Karpensky v Karpensky*, 235 AD2d 594, 595, *supra*; *Matter of Lizzio v Jackson*, 226 AD2d 760, *supra*; *see also*, Family Ct Act § 652 [a]). It is well settled that joint custody is appropriate where the parents are able to communicate in a harmonious and reasonable fashion (*see, Palmer v Palmer*, 223 AD2d 944, 945; *see also, Matter of Morehouse v Morehouse*, 251 AD2d 710; *Matter of Jemmott v Jemmott*, 249 AD2d 838, *lv denied* 92 NY2d 809).

Here, Family Court concluded that both parties were fit parents and that, despite its denial of petitioner's application for sole custody, petitioner was a loving and good parent cap-

able of assuming custody. The court also considered that the parties had, without the guidance of specific language in the separation agreement, arrived at a liberal visitation schedule which had worked quite well. Our view of the record and Family Court's findings support the conclusion that while the parenting styles of the parties may differ, they have been able to arrive at a mutually acceptable division of labor and tasks with respect to the children (*see, Palmer v Palmer, supra,* at 945). In our view, there is no indication that a joint custody arrangement would be unworkable. The record demonstrates that both parents are capable of putting aside their differences for the benefit of the children (*see, Matter of Monahan v Monahan,* 178 AD2d 829, 830) and that petitioner should have joint decision-making authority on issues which form a profound part of the children's lives.

Finally, we reject petitioner's contention that Family Court abused its discretion in failing to order psychological reports, home studies and an in camera interview. Notably, at no time leading up to or during the trial did petitioner, respondent or the Law Guardian request a forensic evaluation, a home study or an in camera interview with the children. Although forensic reports are, at times, helpful and sometimes clearly necessary, there is no evidence in the record sufficiently raising an issue with respect to the mental or emotional health of either party or their children so as to have compelled Family Court to exercise its broad discretion to order a forensic mental health evaluation of the parties or the children (*see,* Family Ct Act § 251; *Matter of Farnham v Farnham,* 252 AD2d 675, 677; *Matter of Smith v Kalman,* 235 AD2d 848, 849; *cf., Matter of Tucker v Tucker,* 249 AD2d 643, 645).

As to Family Court's decision with respect to a probation home study report (*see,* Family Ct Act §§ 252, 653; 22 NYCRR 205.56 [a]), a number of witnesses testified on behalf of each party providing considerable insight into the welfare of the children. Moreover, the primary issue and concern raised with respect to their living conditions was resolved when respondent moved them from the trailer park to the apartment which was favorably described by the probation officer. Regarding the court's failure to interview the children, while such an interview would have been preferable in view of their ages, we cannot say that the court abused its discretion, especially where neither party nor the Law Guardian requested an interview. Indeed, "[t]he decision with respect to the need for such an interview also lies within the trial court's discretion" (*Matter of Farnham v Farnham, supra,* at 677).

We have considered petitioner's remaining contentions and find them unavailing.

Mikoll, J. P., Crew III, Yesawich Jr. and Mugglin, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as denied the Law Guardian's request that joint custody be awarded to the parties; the parties are hereby awarded joint custody; and, as so modified, affirmed.