■ In the Matter of LUCINDA GRATHWOL, Respondent, v JOHN GRATHWOL, Appellant. [727 NYS2d 825] —Lahtinen, J. Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered March 21, 2001, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior order of custody.

Petitioner and respondent, who married in 1994 and divorced in 1999, are the biological parents of a son, born in May 1995. In July 1999, the parties entered into a comprehensive stipulation resolving their divorce action, which was incorporated but not merged into the divorce judgment. The stipulation provided, in pertinent part, that they would have joint legal custody of the child, they would be equal physical custodians with specific possessory custodial periods, upon the child's completion of third grade, he would alternate full weeks with each parent and he would reside and attend school within the Shenendahowa Central School District in the Town of Clifton Park, Saratoga County.

In July 2000, after accepting a full-time teaching position near the City of Syracuse, Onondaga County, petitioner filed a petition seeking to modify the year-old custody arrangement by permitting her to relocate to the Syracuse area with the child. Respondent filed an answer and cross-petitioned seeking primary physical custody of the child. Petitioner moved to Syracuse in the fall of 2000, where she lived with her sister and began her new teaching position. The child lived with respondent and petitioner had weekend visitation. On March 21, 2001, after a hearing spanning four nonconsecutive days, Family Court issued a thorough and well-reasoned decision and order modifying the divorce judgment by granting petitioner sole

custody of the child and permitting her to relocate to the Syracuse area with the child.* Respondent now appeals.

Initially, we note that an existing custody arrangement can only be modified upon a showing that there has been a change in circumstances which ensures the continued best interest of the child (see, Matter of Hrusovsky v Benjamin, 274 AD2d 674, 675). As the party seeking relocation, petitioner had the burden of demonstrating, by a preponderance of the evidence, that the proposed relocation would be in the child's best interest (see, Matter of Tropea v Tropea, 87 NY2d 727, 741; Matter of Crawson v Crawson, 263 AD2d 656, 657). In addition, even in a joint custody situation such as exists here, Family Court must apply the factors set forth in Matter of Tropea v Tropea (supra) in arriving at its determination (see, Thompson v Smith, 277 AD2d 520, 521). These factors include: "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Tropea v Tropea, supra, at 740-741). Additionally, the parties' agreed-upon geographical relocation restriction must factor into a best interest analysis (see, id., at 741, n 2).

Our review of the record and Family Court's decision reveals that the court carefully considered all of the required factors and there was a sound and substantial basis for its determination (see, Matter of Hudson v Hudson, 279 AD2d 659, 661; Matter of Bodrato v Biggs, 274 AD2d 694, 696). We also note that Family Court's findings are entitled to great deference, particularly where it involves assessment of the credibility of witnesses (see, Eschbach v Eschbach, 56 NY2d 167, 173-174; Matter of Bodrato v Biggs, supra, at 696; Matter of Hrusovsky v Benjamin, supra, at 676; Matter of Moreau v Sirles, 268 AD2d 811, 812, lv denied 95 NY2d 752; Matter of Peters v Peters, 260 AD2d 952, 953; Long v Long, 252 AD2d 722), and where that court "has conducted a full evidentiary hearing, its findings are not lightly to be set aside" (Matter of Doyle v McLoughlin, 146 AD2d 940, 941).

Mindful of those guidelines, we turn to respondent's first

---

* The decision and order also provided the framework for a visitation schedule and directed further consultation with Family Court on that issue.

argument that Family Court failed to consider the parties' agreed-upon geographic relocation restriction which confined the child's residence to the boundaries of the Shenendahowa Central School District and required his attendance in schools within that district. That argument is belied by Family Court's decision which refers to the parties' detailed parenting schedule and recognized that the geographic relocation restriction clause was "[a]n essential element of that portion of the stipulation." Moreover, a review of the hearing transcript reveals that much of the proof, particularly from Elizabeth Schockmel, the court-appointed psychologist, centered on the relocation issue and the parties' agreement. However, the geographic relocation restriction is focused on the parties' choice of a school system for their son, which is not the sole consideration in a best interest determination prompted by a parent relocation outside that school system (*see, Carlson v Carlson*, 248 AD2d 1026), and Family Court's decision recognized that the agreed-upon restriction was but one factor it must consider (*see, Matter of Machukas v Wagner*, 246 AD2d 840, 841, *lv denied* 91 NY2d 813). The court also correctly pointed out that an agreement is entitled to less effect than a court's disposition after a trial (*see, Matter of Carl J. B. v Dorothy T.*, 186 AD2d 736, 737). Based upon our review of the record, we find no merit to respondent's claim that the parties' geographic relocation restriction was not factored into Family Court's determination.

Next, contrary to respondent's claim, it is clear that Family Court made a thorough analysis of petitioner's allegedly insincere efforts to secure employment in the Capital District, which, if successful, would have allowed her to continue to reside in or near the school district that the parties had agreed upon for their child. Initially, we note as significant that petitioner's effort to return to work after the parties' divorce in 1999 was motivated in large part by her financial circumstances. The proof also established that petitioner flooded the area with her resumé and interviewed for more than a dozen jobs but was not able to find local employment. In July 2000, with the help of her sister who was a school board member, she secured a full-time teaching position in her field of certification in a school district near Syracuse where the majority of her extended family was located.

Family Court, after hearing the proof and analyzing petitioner's efforts to obtain local employment, concluded that her job search was "inept." However, the court did not find her efforts in that regard to be insincere, and specifically found that she had no design or calculated plan to fail. The court gave thor-

ough consideration to petitioner's job search efforts and, determining petitioner's testimony credible on this issue, properly found it did not serve as a basis to deny the relief sought by petitioner.

Family Court also properly considered the lack of cooperation by respondent with petitioner subsequent to the parties' divorce regarding petitioner's efforts to remain informed about their son's activities and needs, particularly after petitioner's move to Syracuse in the fall of 2000 while the instant proceeding was pending. Lack of cooperation by a custodial parent with the noncustodial parent which interferes with or acts to discourage the continuation of a relationship with the latter has been held to be so inconsistent with the best interest of a child as to raise the probability of the unfitness of the offending party as a custodian (*see, Skolnick v Skolnick*, 142 AD2d 570, 571). This important factual finding, that petitioner will more likely nurture and encourage the child's relationship with respondent, finds more than ample support in the record and provides further support for Family Court's ultimate determination (*see, Matter of Henion v Henion*, 267 AD2d 805, 806-807).

We are similarly unpersuaded by respondent's claim that petitioner failed to show by a preponderance of the evidence that the child's best interest would be "substantially enhanced" by the child's relocation to Syracuse, citing our decision in *Matter of Kemp v Teeter* (252 AD2d 685). That case required the proponent to show that the proposed move would "substantially enhance *either* [the proponent's] *or* [the child's] quality of life" (*id.*, at 687 [emphasis supplied]). Clearly, petitioner's life will be enhanced economically by having a full-time teaching position with medical benefits and thus indirectly have a positive impact upon the child by eliminating the stress caused by petitioner's prior financial instability and enabling her to provide more adequately for the child.

We also find a sound and substantial basis for Family Court's "best interest" determination. Notwithstanding petitioner's move to the Syracuse area in the fall of 2000, the record supports Family Court's finding that petitioner had been the child's primary caretaker. Schockmel testified that petitioner was the "child's primary attachment figure," the person with whom he felt most safe and secure and opined that petitioner did not move away "flippantly" without any concern over the effect this move had on the child, and Schockmel concluded that it would be in the child's best interest to be with petitioner. Respondent also testified that, notwithstanding his custodial role during

the pendency of this proceeding in Family Court, if petitioner returned from Syracuse he would immediately resume the parties' schedule set forth in their stipulation where petitioner had their son nine days out of every 14-day period, acknowledging petitioner's role as primary caretaker for the child. We also note that the Law Guardian's recommendation, although not binding on this Court, fully supports the determination made by Family Court that it will be in the child's best interest to be with petitioner.

Finally, Family Court's thorough consideration of the issues raised herein and the related credibility assessments that it necessarily made in determining those issues not only resulted in a finding that it would be in the best interest of the child to permit the requested relocation, but also properly led it to conclude that the parties' relationship was no longer conducive to the concept of joint custody (*see, Braiman v Braiman*, 44 NY2d 584). Accordingly, we find that Family Court's further modification of the divorce judgment by awarding petitioner sole custody of the child is substantially supported by the record.

Crew III, J. P., Spain, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, without costs.