S.C. v H.B. (2005 NY Slip Op 51484(U))

[*1]

S.C. v H.B.

2005 NY Slip Op 51484(U) [9 Misc 3d 1110(A)]

Decided on July 1, 2005

Family Court, Rockland County

Christopher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 1, 2005

Family Court, Rockland County
S.C., Petitioner,
against
H.B., Respondent.
XXXX

Linda Christopher, J.
Currently before the Court is the petition of S.C., for an order of custody. On March 8, 2005, the Court ordered forensic evaluations of the parties by Alan J. Tuckman, M.D. The forensic evaluation report of Dr. Tuckman was submitted to the court on April 11, 2005.
On June 16, 2005, the Petitioner moved this Court for an order directing that certain documents reviewed by Dr. Tuckman during his forensic investigation, including, the parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003 be released to Dr. Bertram Pepper, Petitioner's forensic psychiatrist. The Respondent submitted an Affirmation in Opposition.
On June 21, 2005, the Petitioner moved this Court for an order directing that Dr. Tuckman provide Petitioner's attorney access to the files maintained by Dr. Tuckman in connection with this matter, including, but not limited to any notes and/or memorandum prepared by Dr. Tuckman during his forensic investigation and/or evaluation, the parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003. The Respondent submitted an Affirmation in Opposition.
 The court appointed forensic evaluation is a well established part of custody litigation, intended to provide the court with an unbiased professional opinion. See, Stern v. Stern, 225 AD2d 540, 639 NYS2d 80 (2d Dept. 1996). The appointment of a neutral forensic psychologist is now essentially required in any custody litigation where parental fitness is a question. See, Vernon Mc. v. Brenda N., 196 AD2d 823, 602 NYS2d 58 (2d Dept. 1993). However, while the value of the forensic custody evaluation is well recognized, problems have developed in the arena of custody evaluations, weaknesses have been recognized in the evaluation process, and it has been noted by both legal and mental health professionals, that many such evaluations are based on "empirically unanchored, intuitive, subjective opinions", rather than scientific conclusions. Timothy M. Tippins, Custody Evaluations-PartX: 'Daubert' and Its Progeny Parsed, N.Y.L.J., Jan. 7, 2005, 3 (col. 1). There is a significant need to ensure that the court receives scientifically valid mental health information, and the court must have the ability to evaluate the validity of the expert's opinion. Id. Cross-examination of the expert and rebuttal testimony that is based on a full critique of the evaluation and careful analysis of the facts, which [*2]form the basis for his conclusions, would aid the court in evaluating the scientific validity of said conclusions, and would be greatly facilitated by thorough pre-trial disclosure. Ochs v. Ochs, 193 Misc2d 502, 749 NYS2d 650 (Sup. Ct., Westchester Cty. 2002); see, Timothy M. Tippins, Custody Evaluations, Part 4: Full Disclosure Critical, N.Y.L.J., January 15, 2004, 3 (col. 1). Thus, Feuerman v. Feuerman, 112 Misc2d 961, 964, 447 NYS2d 838, 841 (Sup. Ct., Nassau Cty. 1982), decided over twenty-two years ago, where the court held that it was improper for a litigant to seek pre-trial disclosure of notes and raw test material "...for purposes of having her private forensic psychiatrist 'determine whether the county forensic psychiatrist and psychologist had sufficient objective justification for their conclusions and recommendations'", is not instructive in light of the current climate regarding the recognized need to scrutinize forensic evaluations to ensure their scientific validity.
In all custody determinations the best interest of the child is of paramount concern to the court, and the court has broad discretion to do what it deems to be right and in the best interest of the child, (see, Friederwitzer v. Friederwitzer, 55 NY2d 89, 432 NE2d 765, 447 NYS2d 893 [1982]), inclusive of the grant or denial of disclosure. Hirschfeld v. Hirschfeld, 69 NY2d 842, 507 NE2d 297, 514 NYS2d 704 (1987). While the court should exercise every means possible to ensure it has all relevant information before making a custody determination (see, Burgel v. Burgel, 141 AD2d 215, 533 NYS2d 735 [2d Dept. 1988]), the court must be mindful of the burden such litigation places upon the parties and the children. Ochs, 193 Misc2d at 507. Thus, the court is obligated to exercise its discretion to balance the benefit of permitting disclosure in custody matters against any detriment such disclosure may cause. Ochs, 193 Misc2d at 510.
In Ochs v. Ochs, the Supreme Court, Westchester County entertained a motion whereby the movant requested pre-trial disclosure of the notes and raw testing data compiled by the court appointed neutral forensic psychologist. Evaluating the request in the same manner that a request for additional psychological testing would be evaluated, the court held that absent special circumstances, such as a showing of bias or a deficiency in the report, the moving party was not entitled to pre-trial disclosure of the notes and raw testing data compiled by the court appointed neutral forensic psychologist. Id. The Ochs court expressed concern that pre-trial disclosure of the notes and raw testing data could have a negative effect on, and jeopardize the future relationship of the parties, that such disclosure could undermine the effectiveness of evaluations since psychologists might be less willing to commit their impressions formed during interviews to paper, and that by giving
...the cross-examiner the opportunity to discredit the psychologist's testimony on the basis of perceived inconsistencies between the notes and the conclusions...[ it would turn ]...the litigation into a lengthy and expensive critique of the psychologist's methodology, rather than a test of the conclusions themselves. 
Ochs, 193 Misc2d 502, 509.
In the instant matter the Court does not find that disclosure of the documents that were provided to Dr. Tuckman for his review and which were referenced in his report, triggers the concerns expressed by the Ochs court. It is the Court's opinion that when the movant is seeking that the court direct pre-trial disclosure of documents that were already provided to the court [*3]appointed forensic evaluator, to his own qualified forensic psychiatrist, and to his attorney to review under the conditions set forth herein, he need not make a showing of special circumstances, (such as bias or deficiency in the forensic report) as is required when requesting a second forensic evaluation (see, Sardella v. Sardella, 125 AD2d 384, 509 NYS2d 109 [2d Dept. 1986]; Rosenblitt v. Rosenblitt, 107 AD2d 292, 486 NYS2d 741 [2d Dept. 1985]). The Court finds that there is substantial benefit to be derived from the pre-trial release to Dr. Pepper, and to Petitioner's attorney under the conditions set forth herein, the documents reviewed by Dr. Tuckman in evaluating the case, including, the parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003, which far outweighs any detriment such disclosure may cause. Allowing Dr. Pepper and Petitioner's attorney, to review and analyze the information contained in these documents which were reviewed by Dr. Tuckman and which are specifically referenced in Dr. Tuckman's forensic evaluation can be of assistance to the court in helping to determine if Dr. Tuckman's conclusions are scientifically valid. Dr. Pepper is a well known forensic psychiatrist who is bound by ethical constraints that will prevent any misuse of the information contained in the documents. Additionally, he is a qualified expert who is competent to analyze these documents in the context of Dr. Tuckman's evaluation and conclusions, and relay his analysis to the court in an efficient manner.
 The parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003 do not contain the subjective thoughts and perceptions of the forensic evaluator that would be found in his notes and memoranda. Thus, the danger of undermining the effectiveness of evaluations by creating a chilling effect on the willingness of forensic evaluators to commit their impressions formed during interviews to paper, that may exist if their notes and memoranda were disclosed pre-trial and subjected to scrutiny, does not exist in the context of pre-trial disclosure of the documents requested herein. Therefore, while the court finds that the documents reviewed by Dr. Tuckman in evaluating the case, including, the parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003 should be disclosed pre-trial, it does not find that his notes or memoranda should be disclosed pre-trial.
 It is well settled that by actively contesting custody, a litigant puts his or her mental and/or physical well being into issue, and thus waives the physician-patient privilege. Frierson v. Goldston, 9 AD3d 612, 779 NYS2d 670 (3rd Dept. 2004); Shepard v.Roll, 278 AD2d 755, 717 NYS2d 783 (3rd Dept. 2000); McDonald v. McDonald, 196 AD2d 7, 608 NYS2d 477 (2d Dept. 1994); Baecher v. Baecher, 58 AD2d 821, 396 NYS2d 447 (2d Dept. 1977). However, "[t]here first must be a showing beyond 'mere conclusory statements' that resolution of the custody issue requires revelation of the protected material." Perry v. Fiumano, 61 AD2d 512, 519, 403 NYS2d 382, 386 (4th Dept. 1978); see, McDonald, 196 AD2d 7. The court must balance the interest in protecting such confidential communications with its duty to protect the interests of the children at issue in custody litigation, and the privileged communication will be disclosed when it is [*4]necessary and material to the determination of custody. Perry, 61 AD2d 512; McDonald, 196 AD2d 7. When the confidential communication is in connection with a custody litigant's psychiatric and psychological treatment, courts have held that the litigant has waived the physician-patient privilege. See, Shepard, 278 AD2d 755 (the court permitted custody litigant's psychologist to testify in contravention of the psychologist-patient privilege); Frierson, 9 AD3d 612 (the court found that written waiver or consent was unnecessary for release of information concerning custody litigant's psychiatric treatment). In contrast, the denial of disclosure of medical records has been found to be appropriate when the information sought was clearly not relevant to the issue of custody. See, McDonald, 196 AD2d 7 (the court denied the husband's request for disclosure of the wife's medical records regarding information concerning her in-vitro fertilization and the egg donor who was not a party to the action).
The Court finds that in the instant matter, respondent has already disclosed her medical records to the extent that she has provided these documents to Dr. Tuckman, the forensic evaluator, to aid him in preparing his evaluation for the court. Moreover, where there have been specific allegations regarding a party's mental health, as there have been in this matter, the court finds that the contents of Respondent's Good Samaritan Hospital Frawley Unit admission and her psychiatric treatment records with Dr. James W. Flax are necessary and material to the determination of custody. Pre-trial disclosure of these documents to Dr. Pepper will assist him in fully critiquing Dr. Tuckman's report, which will provide for more meaningful cross-examination of Dr. Tuckman, and will ultimately aid the court in evaluating the scientific validity of his conclusions as set forth in his report. Pre-trial disclosure of these documents to Petitioner's attorney under the conditions set forth herein, will aid in preparation of direct and cross examination of the forensic psychiatrists, to efficiently provide the court with the best information possible.
Therefore, the Petitioner's request to release the file, in connection with this matter, including the notes and memorandum prepared by Dr. Tuckman is denied, while his request to release the parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003 to Dr. Bertram Pepper is granted, on the condition that Dr. Pepper signs a document acknowledging that the aforesaid documents are privileged and confidential and to be only used by him, and they are not to be disseminated or circulated or discussed with any other person or party, except for the Petitioner and/or his counsel. However, while same may be discussed with the Petitioner, he is not to be given these documents or copies of same. Petitioner's attorney may review the parties' Department of Mental Health Forensic Unit Questionnaires, the Good Samaritan Hospital Frawley Unit admission of Respondent dated March 1, 2003 and the Respondent's psychiatric treatment records with Dr. James W. Flax from March 11, 2003 to July 11, 2003 that are provided to Dr. Pepper. However, said documents shall remain in Dr. Pepper's possession, and copies shall not be given to Petitioner's attorney. Dr. Tuckman shall either allow Dr. Pepper access to the aforesaid documents for the purpose of copying same, or Dr. Tuckman shall provide copies of the aforesaid documents to Dr. Pepper.
This decision shall constitute the order of the Court.
ENTER
[*5]
Dated: New City, New York
July 1, 2005_________________________
LINDA CHRISTOPHER, J.F.C.